Number 22, 14106, Anthony Colon v. Wendell Smith. Whenever you're ready, Mr. Bogan. Thank you, Your Honor. Good morning. I'm Bruce Bogan, and I represent the defendants, Corporal Rozalowski and Deputy Smith. And I apologize for the confusion earlier. Since we have two Smiths here today on the docket, that's why I thought it was my turn to argue. So my apologies again. I'm here today because we believe that the court erred in failing to grant the defense of qualified immunity to Defendant Rozalowski and Smith. What I am here today is to argue is I think that before we get to that point, the court made several correct findings as it relates to the sequence of events that occurred in this case. The court correctly found that the defendants were both acting within the scope of their discretionary authority as law enforcement officers. The court correctly found that the plaintiff was not merely an innocent bystander who is simply recording an officer and asking questions, but rather interrupting the defendant's questioning of Mr. Jackson, one of the individuals who came out of the apartment, and continued to do so when told to stop by Defendant Rozalowski. The court correctly also found that Defendant Rozalowski had reasonable suspicion to believe that the plaintiff may have been involved in the altercation that triggered the 911 call and the exact reason why they were there. He was there to investigate what was alleged to be a physical fight. The court correctly found that it was reasonable to request Mr. Coloni's ID to gain further information about his involvement in Curt Terry v. Ohio and he had a right to ask for his identification at that point in the process. The court correctly found that there was no question that Let me ask you about the reasonable suspicion. So, as I understand it, the facts are that Mr. Jackson and Mr. Coloni came down the stairs. Mr. Coloni was asked if he was Mr. Jackson and he said no. They figured out that the other person was Mr. Jackson. Mr. Coloni then walked off to the side and left the location. Is that correct? Well, he was on the sidewalk about 8 to 10 feet away from where they were standing. So, at that point, they didn't have any reason to suspect that he had been involved in the altercation. Is that right? No, I believe that they did have a reason to suspect because when they got there, Defendant Rozalowski saw both Mr. Jackson and Mr. Coloni coming down the stairs of the apartment where he was called to investigate. And so he obviously knew that they were together. They were coming from the same location. And so he wanted to further investigate. He did ask, you know, whose apartment it was. And Mr. Jackson said it was his. And at that point, he was wanting to get into the apartment to see if there was, you know, to check to see if everyone was OK. And so that's what prompted and started the investigation. So, you know, at the point when he stepped 8 to 10 feet away, he was still part of the process, the ongoing investigation, if you will. So in the point when, you know, he began to, I guess, object to the fact that Mr. Jackson was put into handcuffs, Rozalowski stopped his attention in terms of trying to detain and investigate and now answer questions that Mr. Coloni was proposing to him. And so Officer Rozalowski said, if you're going to inject yourself, let me see your ID or something to that effect. But his sworn testimony in the case also is that he was planning to detain him and put him in handcuffs at the point when he went over and began to interact with him after he was stopped by Mr. Jackson during the course of the investigation. So to answer your question, yes, there was that statement that was made, you know, are you interjecting yourself? And then, of course, he asked him multiple times, it means six to eight times, you know, do you have ID? And he did not, of course, respond and provide that information. And then the next sequence of events, of course, resulted in him being taken to the ground and arrested. And let me ask you a question. So as you noted, the district court found that Rozalowski had reasonable suspicion to conduct a Terry stop of plaintiff and request his identification. And so that issue is not on appeal. That has not been contested, correct? I'm not contesting that. Okay. So exactly, the point being that— So that initial Terry stop, the district court has ruled on it, and that's not before us. It's not before you. The question is did the court fail to recognize that there was arguable probable cause at that point in time after he detained him, started to try and put him in handcuffs? And then, of course, the sequence of events that followed ended up with him being on the ground, he got tased and handcuffed and taken to jail. But before that point in time, the question becomes did his conduct, and his conduct was more than just words in terms of challenging the issue of, you know, why are you putting Mr. Jackson in handcuffs? Why are you doing this? Yes, you are arresting him. What conduct was more than just words? The conduct was more than words were that he refused to identify himself. He is, in fact, at this point being detained, and then, of course, now his words were causing the delay, the interruption, transferring of his investigation to Jackson, now to answer questions. So that part of it obviously is words, but the more than words part of it is he's detained, and he is not complying with the request to give identification. So this case can be distinguished from the plaintiff's argument is that, well, this is a classic First Amendment case. I'm recording and we're videotaping, but keep in mind, first of all, there is no First Amendment claim being asserted here. It's a Fourth Amendment case, but obviously you have a right to videotape the police under certain circumstances, but you don't have a right to interfere with investigations. So there was arguable probable cause for obstructing under the Florida Statute 843.02. Correct. Is that your argument? That is my argument. But as the Florida law says, whether I'm wrong, the Florida law says you violate that if you refuse to provide ID during a Terry stop. Correct. But that would just go to the false arrest, though, whether there's arguable probable cause for false arrest. Correct, Your Honor. I mean for an arrest, not a false arrest. For an arrest itself, and obviously there's a state law component to it. Obviously, he's also claiming that there is a state law false arrest case, but if you have probable cause or arguable PC, that should go to the Florida law. Arguable probable cause for an arrest. We still have an issue of fact about excessive force, as I see it, because Mr. Colon denies that he pushed the officer at that point. He says they then took him down, and there was no push, no aggressive movement by him. So he would still have, it seems to me, an issue of fact as to whether or not the force was excessive because they then took him down to the ground, you know, and making the arrest. And he said, your officer says, well, that's because he pushed at me and shoulder checked me. And Colon says that didn't happen. So, yes, so there's two components there. I agree with you that there's somewhat of a dispute about the sequence between, you know, who pushed who and what caused the. It's not somewhat. It's not somewhat. There is an issue of fact as to whether or not there was a push and shove that then caused him to take to the ground or whether Colon had just refused to provide his ID, which I don't think would give him cause to first try to arrest him in the way they did. Are you following me? Even if there's probable cause for an arrest, it seems like there was an excessive force fact issue in how they made the arrest. So assuming you have a valid arrest, that there's arguable probable cause for arrest, the level circuit clearly is recognized. Every arrest has the right to use some level of force in order to effectuate that arrest. And in the constitutional analysis, you always have to look at the prospect. He was immediately thrown to the ground and tased. They didn't say, you're now under arrest. Put your hands out or try to handcuff him or do anything. They didn't do anything. They just immediately, it depends on who you believe here, they say they did it because he then at that point pushed him. He said, I did nothing. They got, I just refused to give him my ID, and they then threw me to the ground and immediately tased me. So I don't know why any arrest, before you announce you're under arrest or at least try something else, why that wouldn't be excessive force. Help me with that. So ultimately, Your Honor, I think that there is a little more in between them. Okay, what is it? A little more between the component of immediately tased. He wasn't immediately tased. The testimony is when he was on the ground with Deputy Smith. The testimony from Okay, well let's go back to immediately thrown to the ground as the form of arrest before doing anything. Saying you're under arrest, put your hand before anything, being thrown to the ground. Let's start with that. Okay, so does that rise to the level of a constitutional violation? I don't know that there's any case law that says tackling someone to the ground is a per se constitutional violation. So in my analysis of the case and what we've argued here is that this is essentially what we refer to as a de minimis type of claim. This is not a Fourth Amendment violation by virtue of being tackled to the ground under these circumstances. He sustained no significant injury of any type. The video shows he actually thought he laughed about being tased, said it tickled. He was more concerned about having a media interview with the local news. Right after he bonded out of jail, he went to the emergency room one time. He's had no significant treatment, no significant injury. What was the justification for tasing him? Wasn't he already on the ground at that point? The justification was that there was a position of advantage that he had taken over Deputy Smith. So that's what Roslowski's testimony is. When he observed after Roslowski, excuse me, Smith had taken him to the ground, he was now in a position of advantage. He was concerned for his safety and he tasered him at that point. So the tasing was in support of the arrest, was to help effectuate the arrest. Isn't that what you said? So the tasing was a combination. Obviously, it ultimately concluded with the arrest. But it was done because he was in a position of advantage over Deputy Smith on the ground, and he was concerned for his safety. So he needed to get him off of Deputy Smith. And that's in part shown in one of the videos that was taken from, you know, a witness upstairs. And you can see the two of them on the ground. And coincidentally— But I thought that video, they are trying to say Colin rolled over on top of Smith. But the video showed when they were on the ground, Colin didn't roll on top of Smith. So unfortunately, I don't think the video starts at a point where, you know, we can see what preceded it. It sort of starts in the middle of the fact that they're both on the ground. But whatever, when it starts, what does it show? It doesn't show Smith on top—I mean, excuse me, it doesn't show Colin on top of Smith. When it starts, he's not mounted on top of him, if that's to answer your question. Yeah. I don't disagree with you, but the testimony from Roslowski is that's what he observed. And he tased him because of the resistance, of the fact that Smith was in a position of disadvantage. Are you—you're resisting the conclusion that Roslowski, by tasing Mr. Colin, was participating in the arrest. Am I—I'm picking up on that. Certainly it runs through your brief. I don't argue that he is not a participant. What I've argued is that the court made a conclusion that because he tased him, that equates to an arrest. And so I don't know of any case law that's, you know, cited either by the court or others that put him on notice that if he tased someone, you've now arrested them. And so that's the logical conclusion. He signed an incident report. He did not sign the charging affidavit. The charging affidavit was signed by Deputy Smith. So is it a matter of— Who took him down? Who took him to the ground? Deputy Smith. Okay. But so in our case law, in Brown v. City of Huntsville, to establish Section 1983 liability for false arrest, a plaintiff must prove that an officer participated—this is going back to the false arrest— must prove that an officer participated in the arrest or was a supervisor. And by my calculation, Mr. Roslowski satisfies both, the participation and the supervisory prong. But I think you're resisting both. So I'm not—I don't believe the plaintiff established that he was his supervisor. He was his— He was the highest rank on the scene. He was the corporal and deputy. I'm not arguing that issue, Your Honor. Okay. I agree with you that he participated. Does that amount to him being— Well, he gave the direction to Smith to handcuff Jackson. He said, go handcuff Jackson. True. Yeah. He didn't handcuff Jackson. He told Smith to go handcuff Jackson, and he was clearly in charge. Well, he directed another officer to do something. Yeah. So I'm not arguing that, Your Honor. All right. Thank you. Thank you. Thank you. Mr. Haynes, nice to see you again. Good morning, Your Honors. Nice to see you as well. May it please the Court. Attorney Carl Haynes on behalf of Ms. Cologne, who is present. Your Honor, let me initially address the question, the one question by Judge Branch. I'm not arguing, Your Honor. In my brief, I briefly touched on the fact as to whether or not there was reasonable suspicion for a terrorist stop and if one actually occurred. The district court's opinion does say that there was reasonable suspicion, but never says that Reslovsky was attempting to effectuate a terrorist stop. If we think about it, look how much time transpired before he ever even attempted to physically come in contact with Mr. Cologne. He had already spoken to Mr. Cologne when they were coming down the stairs. If you're going to do a terrorist stop, first, you know, you start engaging with a consensual encounter, explaining why you're there, and then you say, hey, can I talk to you, let me stop and frisk, you know, things of that nature. You can proceed with the argument as you see fit, but you did not appeal that issue. And the district court said this temporary seizure does not violate the Fourth Amendment. Accordingly, Reslovsky is entitled to summary judgment on count two to the extent the plaintiff alleges an unreasonable seizure for the initial terrorist stop. I'm not sure that that's the best use of your time, but — Yes. Well, the point is we're not allowed to appeal. You're right. We have no jurisdiction over a client of qualified immunity under Winfrey, so you couldn't appeal it if you wanted to. We would say there's no jurisdiction. Right. And so that brings me to what my next issue is. I'm hoping the court looks at their appeal the same way. You all have a litany of cases that focus on the fact that it's not appropriate to do an interlocutory appeal to challenge factual determinations of the district court that are in dispute. No where in the initial brief does the appellant say this violates clearly established law or it wasn't clearly established that these actions could not take place. What is unequivocal is that at the time Reslovsky began his engagement with Mr. Colon, it was because you interjected yourself. Smith's own deposition in the criminal case clearly says that we were arresting him because he was interjecting himself. Never an issue of failing to present his driver's license. In fact, Smith... It doesn't matter as long as they had probable cause for some crime. They don't even have to charge him with it. They charged him with battery or whatever they charged him with. They didn't charge him with this. It's whether they had arguable probable cause to arrest him for some crime, and the best thing they've come up with is obstruction under the Florida statute. And Florida law says you can do that if they won't give you the ID. I disagree. I'm sorry. So help me on that. I disagree with what Florida law establishes. And even in my brief, I cited some district court opinions as well as DCA opinions that have clearly articulated that failure to give your driver's license is not an obstruction in the cherry stop analysis. When there's probable cause to arrest and they need your name in order to process you... So you're saying I need to look at those cases and see if they're reasonable suspicion cases or some other arrests. Yes. One case they cite dealt with a person being in custody after his Miranda and being booked. In those cases, yes, you must provide your driver's license. But for the remainder of my time, Your Honors, I would like to focus, one, clearly on the fact that they never raised the clearly established issue because we all know that it's clearly established since 2020 that a person can video an officer from a safe distance. A person can question an officer. It's all deep in my brief of suspects questioning officers, why did I get stopped? Why are you searching my car? And there is no prohibition against that. Florida statute and constitution and even the common law has always recognized, and this circuit has recognized, the right to resist without violence in unlawful arrests, in unlawful detention, in unlawful search. Mr. Colon exercised that right by simply asking the question, why is this individual being arrested? One thing that they never even addressed in any of their response briefs. When you place a person in handcuffs, that is a de facto arrest. Even during a terrorist stop, you only get to handcuff the person if you can articulate a reasonable fear for your safety. Neither one of these individuals did anything to deserve to be in cuffs. So when Mr. Colon asked that question, he did so appropriately. If I may jump to the public policy. But it was undisputed, however, that the officer asked six or eight times for his ID. I don't know if he said driver's license. Asked for his ID and he refused to give it. That's not disputed, is it? It is disputed because the tape doesn't say that he said, I'm not going to give it. No, he just doesn't do anything. Okay, so it's inaction. Okay, let me rephrase it. It's undisputed that the officer asked him six times, maybe eight, I don't know. I'm not sure it matters. And he did not produce any ID. That is not disputed. Okay. To one extent, he didn't ask him to produce it that many times. I believe if you look back at the tape, I think all, if not the majority of them, do have ID. Okay. That's not asking him to produce it. And even with asking him to produce it, you just said, since I'm interjecting myself. Not that I'm a suspect. Not that I'm anything of that caliber. You're doing it in retaliation because I'm interjecting myself. You handcuffed Mr. Jackson. It's clearly in the record. Can I search your house? No. Okay, then you're getting handcuffed. Another exercise of constitutional right to not allow for a search. But then this officer, in retaliation, says, I'm going to place you in cuffs. Whether it's an arrest, whether it's a chair assault with cuffs, no articulation of any reasonable fear of any of these individuals except for what is in his criminal deposition. The reason why I attached that, because I was the attorney that did the criminal case. And all throughout, you hear this, Veslavsky's anger and frustration, characterizing the situation as these people. And vile and disgusting. He was upset simply because Mr. Jackson couldn't pronounce his name. We hear that and see that on the video. Normally, this circuit has upheld in video cases, you know, where there's a dispute as to what really happened because we're seeing objectively, and then there's two variations of what we're seeing could be. This is true. And that's all this court said, is I'm looking at this video, and while this person is asking these questions, and he's interjecting, those are just words alone, and you all have stated it over and over again. I've made sure I cited your published opinions in my brief, that words alone, and you're adopting what the Florida Supreme Court said, words alone do not arise to obstruct me. That's all this young man did. And if we think back, and I just would like to, on the public policy issue, we don't even have the Derek Chauvin case if those bystanders were not recorded. And they were asking this officer, why are you doing this? Why are you doing this? Maybe if he would have listened, the young man would not have perished. We cannot allow a decision to come from this court that takes away every person's right to police the police. If he would have, and notice who confronted who. In the tape, you can see that the camera is still, and it's Raslowski approaching Mr. Colon. So let me ask you a question about this Florida statute criminalizing the obstruction, and that Florida courts have said that physical conduct must accompany the offensive words to convict under that statute. What about the fact that the cases, at least that I've been reviewing, concerned people who were not legally detained, whereas here, your client was subject to a Terry stop? I think it was a chaining decision out of the middle district. That person was legally detained to some extent in a police investigation. And the reason why I quoted that opinion because it was a 22 page, it was an excellent opinion as to what officers should or should not do, but also as to what should go to the trier of fact. Again, at this time, he wasn't detained. He was standing there doing the video. The officer then turns around and says, since you're, if the officer would have said, stand right here, I'm going to question you a little bit later. We're going to conduct a Terry stop on you. Then maybe they would have a little bit of an issue. But again, when my time came to appeal, because he interacted with him well before that time and never used his police function to say, okay, I need to question you about whether or not you're involved in this. I'm not getting into whether or not he fit the description or the caller not seeing anything. In fact, if I could take it on the side, you all have citizens that perished in Florida because the caller called it something he heard and the police took it as something that was seen. The police should have, and there's a lot of case law that talks about what a consensual encounter is. We should perform a knock and talk versus Terry stop this with a knock and talk situation. Can I talk to you? We got a call. What's going on? Knock and put you in handcuffs because I believe you've committed a crime situation. That's where this whole thing went awry based on a caller who heard something, but these officers took, you can't hear him. You can't see a fight in the, the caller was clear. I didn't see this. I can't see this. I'm in my apartment. He did nothing to get any foundation as to his investigation. So at the time he went to place a suit in place, my client under arrest had told him about Terry stop. And we do know that 901.17 Florida statute says that when you're making a warrantless arrest, the officer for misdemeanor, the officer shall inform the suspect. There's no communication of intent to arrest for not showing your ID. There's no communication of intent to do a Terry stop to the question about what's going on in the apartment. And why didn't he? Because Jackson's the one who lived in the apartment. Resolowski saw my client go off the stairs, so he never went into the apartment. So any fight that happened in the apartment, this gentleman has nothing to do with at all. He actually with counsel, see when you do the criminal deposition, you don't have an attorney to kind of tell you, well, you know, maybe, you know, you don't have that. That's the purest form. And that criminal deposition, he expresses why he did it. Smith expresses why he did it because he was videotaping. We didn't allege first amendment because it's tied into the retaliate. The fact that we argue that he was retaliated against for doing a lawful action, which is recording. And the law has been cleared that you can resist an officer's unlawful arrest. Do you have a fraud up case you want me to read? I know you distinguish them by saying in all of those cases, it wasn't a Terry stop. It was somebody who was in custody and they wouldn't do the ID or they had already been charged. What's your best case for this conduct here is insufficient for arguable probable cause. There is. I'm sorry. Yeah. I would like to give you the actual federal opinion. That would be fine too. Federal and particularly Florida law too. Yes. This is my opinion. It's an unfocused opinion. This circuit is petty home. Petty home was stopped doing a traffic stop. A lawful traffic stop. Okay. Risk case number. Excited in my brief. Okay. That's all I need. Okay. So petty home and what else besides petty home? And I then added a few of DCA cases. Your Honor, when I did that, but petty home actually. So look at the DCA cases around petty home. Let me just look at my brief. Yeah. Okay. That's all I need to know. I'm just trying to. Okay. Okay. Before you sit down, you just brought up warrantless arrest. Let me tell you about my problem on the denial of qualified immunity on your malicious prosecution. Okay. They deny qualified immunity, but the problem is, as you just said, this is a warrantless arrest. Right? Okay. So we don't have a use of process to arrest here. And we don't have anything. So I don't see how you have a malicious prosecution claim because there's no second seizure. Malicious prosecution requires a seizure pursuant to legal process. It's taken a while for the law to become clear, but it's now clear in Williams and other cases. So how do you have a malicious prosecution claim? Your Honor, as I see it, first, the actions of the officer who commenced the arrest. The fact that he did a warrantless arrest does not pull him out of the guise of malicious prosecution because he then did the incident report that was forwarded to the state attorney along with the arrest affidavit. He gave a deposition in support of- Yeah, but he was never indicted for this. It was dismissed, right? Oh, no, he wasn't. No, he has a criminal record. He was, they filed an information. I mean, they floored the prosecution with information. Okay, was he arrested again or was he stayed out on his bond on the information? No, he was arrested that day for these offenses. I know, but it was a warrantless arrest. So tell me what happened next. Then did he, did he got an information? Did he plead? What did he plead to? He got information. Well, he got a good criminal defense attorney. Okay, so it was dismissed, but did he ever go to jail again on the information or was he out on bond from the first arrest? He was out on bond, Your Honor. Okay. You got to have, I'm just telling, you can take it for what you want, but there's a lot of law now that says you got to have a seizure pursuant to the legal process. You don't get the malicious prosecution. You may have the false arrest, but you're not going to get the malicious prosecution. If I'm not mistaken, I don't think I have the ability to re-brief it. I think the filing of the information constitutes that. Yes. Okay. It doesn't have to actually be re-booked for me to ask for further. Okay. I understand your position. Thank you. Thank you, Your Honor. I don't have time. As described. Thank you. Thank you. Briefly, Your Honor, just a couple of issues on rebuttal. Plaintiff's counsel raised an issue that the court should look at the issue of jurisdiction. I would just point out that in his brief, he stipulated to the court having jurisdiction for purposes of this appeal. In terms of the arguable probable cause issue. Let me just stop you there. He stipulated jurisdiction as to what he's appealing. He didn't stipulate to jurisdiction as to what he's not appealing. No. Okay. Well, maybe I misunderstood what his argument was. Okay. Yeah. We wouldn't have, even if he appealed it, we wouldn't have jurisdiction over the grant of qualified immunity. It doesn't become moot to final judgment. I promise you that's the law. I think what I interpreted, maybe I misinterpreted his argument, but he was saying that because there is a disputed issue, factual discrepancy, so to speak, that the court didn't have jurisdiction. And I think that's what I understood his argument. Maybe I don't want to argue for him, but. No. That's true about the false arrest and the. Okay. Never mind. Go ahead. Okay. Arguable probable cause. Let me just point out again. He was detained. He's not just videotaping or arguing. He's under a Terry-style detention. That's undisputed. That is part of what is before the court. At this point, he did more than just words. He did more. He refused to provide his identification. So, that's what separates this case from all the other cases that have been cited. And with respect to the whole concept of what Raslowski's statements to Mr. Cologne were about interjecting himself or a statement that he's referencing, apparently, that he considered this to a high crime area is irrelevant to a qualified immunity analysis. As the court knows, intent is not an issue for purposes of determining whether he's entitled to qualified immunity. It's an objective reasonableness analysis. Could a reasonable officer under these circumstances objectively find that there was probable, arguable probable cause for this arrest? That's the issue. It would go to malice for purposes of official immunity on the state law claims. Isn't that right? The motivation. Yes, for purposes of a malicious prosecution, assuming that there is not probable cause first, because obviously if there's probable cause, then your malicious prosecution claim goes away on state law. But for purposes of that, if you go to the next step, then malice is required to be proven. To not only prove a malicious prosecution, but also get around his state law statutory immunity claim. So, again, just to finish, in terms of the Cheney case that we talked about, that is a district court opinion, which is certainly not controlling with respect to Officer Raslowski or Mr. Smith, Deputy Smith's conduct on that particular day. It didn't put them on notice of any particular actions as it relates to this Cheney decision. So, 901, Florida Statute 901, certainly has no application to the purposes of this 843.02. He's in uniform. There is no question that this is an officer. He arrives in a patrol car. Both of the officers are standing there. So, there is no dispute that the officer was going to be investigating, and he was investigating, and he detained his friend. So, I don't see any application of Florida Statute 901. Okay. I need to clarify something on the state law claims. I didn't think you raised official immunity on the state law claims. Well, Georgia official immunity. I don't think you raised any type of immunity on the state law claims. I believe it's raised for purposes of summary judgment. I'm talking about on appeal up here. You may be right. You may be right. Okay. And the district court denied on the merits under Florida law these claims, these state law claims. The district court denied all the claims. Correct, Your Honor. Because of the dispute about the altercation. Yes. Okay. The district court denied for the same reasons. If you consider how... I don't think we have jurisdiction over them unless we take the pendent appellate jurisdiction, because we have something else. I understand that. I guess the point that I would argue is that if you find an arguable cause for that address, everything that flows from there, whether it be battery under state law, false imprisonment under state law, or intentional infliction of emotional distress, goes away. And that's... Thank you to both counsels. You've been very helpful. Court is adjourned until 9 a.m. tomorrow morning.